**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **4 ACES ENTERPRISES LLC D/B/A 4 ACES LOUNGE; BIG DAN'S BAR, INC.; BIG TYME INVESTMENTS, LLC D/B/A BIG DADDY'S PUB & GRUB; BOTTOMS UP OF HOUMA; CD ENTERPRISES OF HOUMA LLC D/B/A LARUSSA'S LOUNGE; CKBCPB5 LLC D/B/A THE CHATTER BOX; DAT BAR, L.L.C.; DOUBLE HILL BAR & GRILL, LLC; HALW, LLC D/B/A THE BREAK ROOM; JOM LLC D/B/A JUST ONE MORE; JUDY'S NITECAP, L.L.C.; KJ'S PLACE LLC; LONGSHOTZ 1, LLC D/B/A LONGSHOTZ; MARLEE CELINE, LLC D/B/A MURPHY'S; PARADISE SPORTS BAR & DAIQUIRIS, LLC D/B/A EPIC LOUNGE; PJSANCHEZ LLC D/B/A COBALT PETE'S; R & J LAPEYROUSE, LLC D/B/A JEAUX'S NEW HORIZON; R. HEASLEY, LLC D/B/A RAM ROD'S SALOON; TAP DAT, L.L.C. D/B/A THE BRASS MONKEY; THE BOXER & THE BARREL, LLC; THE OUTER LIMITS BAR, LLC; TIPSY CAJUN, LLC** | Civil Action No._____ <br><br> District Judge_____ <br><br> Magistrate Judge_____ <br><br> **JURY DEMAND** |
| **VERSUS** | |
| **JOHN BEL EDWARDS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA; AND H. "BUTCH" BROWNING, JR., IN HIS OFFICIAL CAPACITY AS FIRE MARSHAL OF THE STATE OF LOUISIANA** | |

# EXHIBIT E



Jeff Landry
Attorney General

**State of Louisiana**
DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 94005
BATON ROUGE
70804-9005

July 15, 2020

OPINION 20-0068

Honorable Larry Bagley
State Representative
Louisiana House of Representatives
671 Hwy. 171, Ste. E
Stonewall, LA 71078

15-A     CONSTITUTIONAL LAW

La. R.S. 29: 721, *et seq.*
La. R.S. 29: 760, *et seq.*

Certain provisions of 89 JBE 2020 may be unconstitutional and unenforceable.

Honorable Rick Edmonds
State Representative
Louisiana House of Representatives
3931 S. Sherwood Forest Blvd., Ste. 200
Baton Rouge, LA 70816

Honorable Blake Miguez
State Representative
Louisiana House of Representatives
410 N. Broadway St.
Erath, LA 70533

Honorable Alan Seabaugh
State Representative
Louisiana House of Representatives
401 Market St., Ste. 1120
Shreveport, LA 71101

Honorable Beau Beaullieu, IV
State Representative
Louisiana House of Representatives
800 S. Lewis St., Ste. 206
New Iberia, LA 70560

Honorable Charles "Chuck" Owen
State Representative
Louisiana House of Representatives
P.O. Box 55
Rosepine, LA 70659

Honorable Robert Mills
State Senator
Louisiana Senate
105 Harvey's Way
Minden, LA 71055

Honorable Dodie Horton
State Representative
Louisiana House of Representatives
954 Hwy. 80, Ste. 400
Haughton, LA 71037

Dear Representatives Bagley, Beaullieu, Edmonds, Horton, Miguez, Owen, Seabaugh, and Senator Mills:

We received your requests for Attorney General Opinions and/or inquiries related to mask mandates and 89 JBE 2020, and we determined that guidance for business owners and law enforcement is warranted.

## INTRODUCTION

Over the past several months both myself and the professional staff at the Louisiana Department of Justice have worked tirelessly to provide the citizens and public officials of Louisiana with guidance regarding the COVID-19 pandemic. We have worked hard to ensure a balance between protecting constitutional liberties and the overall health and welfare of the public.

When the COVID-19 pandemic started, the goal of government action was to ensure that our healthcare capacity to treat citizens was not overrun. Executive orders and mandates were put in place under our laws and Constitution with that simple goal in mind. I supported those actions. To that end, we seem to have achieved that purpose.

Today I am concerned that additional restrictions are being placed on our citizens, while we no longer have a set benchmark with which to measure our success.

The Governor's recent mandates do not appear to serve achieving any type of goal or mission in a manner consistent with statutory authority and Constitutional provisions. I am sending this guidance in large part as a response to the many calls and inquiries I have received from you, private citizens, and other elected officials regarding the Governor's most recent Proclamation that purports to impose a statewide "face covering" requirement (hereinafter referred to as the "mask mandate"), limit gatherings indoors and outdoors to 50 people, and significantly restrict "bars" from their normal operations. Most importantly, this guidance is for the many law enforcement agencies that have contacted me regarding their concerns about enforcement. After careful consideration, it is my opinion as the chief legal officer of the State that the order does not pass the constitutional test. It is unfortunate that, despite the fact that I am the statutory legal advisor to the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP"), I was not consulted prior to the issuance of any Executive Order during COVID-19, including the most recent Proclamation.

## ANAYLYSIS

Let me begin by first emphasizing that this guidance in no form should be taken to discredit or reduce the significance of any protections taken by an individual, including the wearing of a face mask for the purpose of preventing infection from COVID-19. However, all mandates that carry enforcement penalties against the public must be rationally related to achieving a legitimate public purpose. To the extent they impinge upon the exercise of constitutionally protected rights, they must meet an even stricter test and be narrowly tailored to achieve a compelling government interest to such a degree that they justify the concomitant reduction in individual liberty.

For that reason, I urge all law enforcement (including the Fire Marshal and other individuals acting under the color of law) to exercise extreme caution when responding to calls related to violations of facemask orders. While face coverings may be

OPINION 20-0068
Representatives Bagley, Beaullieu, Edmonds, Horton, Miguez, Owen, Seabaugh, and Senator Mills
Page 3

recommended, the mask mandate cannot be enforced with criminal or financial sanctions. Furthermore, threats to a business' occupational license or other forms of threats to the business (cutting off water or sewer service, for example) also would violate basic due process and could expose the government actor to civil liability.

**89 JBE 2020**

On July 11, 2020, Governor John Bel Edwards issued 89 JBE 2020, a Proclamation amending a pre-existing order, issuing a statewide mask mandate, limiting indoor and outdoor gatherings to 50 people (with exceptions), and limiting service in "bars." As a general matter, the order does not define numerous terms, contains minimal statistics in support, and contains no geographical data. It vaguely references *possible* sources of outbreaks based on vague hearsay from "contact tracers." This foundation is a flimsy one upon which to build a criminal regulatory edifice.

It is even more vague as to penalties and enforcement. At the same time, it is riddled with many exceptions, all of which are subjectively determined, such that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *See Bode, et al. v. Kenner City, et al.*, 303 F. Supp. 3d 484 (E.D. La. 3/19/19). Among other restrictions on the Governor's authority, which will be addressed relative to each requirement, prohibitions must be clearly defined and government should articulate its aims with a reasonable degree of clarity. The restrictions contained in this Proclamation fail this basic test. Similarly, the Proclamation must provide fair notice so that those who wish to follow the order may avoid its prohibitions. The Proclamation also fails this test because citizens not only cannot predict which actions are prohibited, but also they face potential unlawful arrest and unlawful searches and seizures for "trespassing" or "any other laws" that a person "may violate" even if they are fully compliant. Arbitrary and discriminatory enforcement is not only possible, but it is *highly probable* and even *encouraged* by the order. At the same time, the order is also unconstitutionally overbroad. Moreover, government's legitimate purpose to validly control and prevent some conduct cannot be accomplished by means that sweep unnecessarily broadly and invade the areas of freedoms protected by the First Amendment. The Proclamation fails this fundamental constitutional norm.

Louisiana courts have also noted other limits on the Governor's powers and consequences of exercising powers not granted to him. For example, the Governor has no power to make substantive law through an executive order, even in an emergency. And if the Governor's actions amount to a constructive taking of private property, then the State may have to pay for it.[1]

---

[1] The Louisiana First Circuit specifically stated, "[r]eading the HSEDA as a whole, it is clear that the legislature did not intend to convey legislative authority upon the governor during a state of emergency. As previously indicated, La. R.S. 29:724(A) permits the governor to issue executive orders, proclamations, and regulations to "effectuate the provisions of [the HSEDA]." *Louisiana Hosp. Ass'n v. State*, 2013-0579 (La.App. 1 Cir. 12/30/14), 168 So. 3d 676, 687, *writ denied*, 2015-0215 (La. 5/1/15),

OPINION 20-0068
Representatives Bagley, Beaullieu, Edmonds, Horton, Miguez, Owen, Seabaugh, and Senator Mills
Page 4

**The Mask Mandate**

The order states: "Every individual *shall wear a face covering* over the nose and mouth when inside a *commercial establishment* or *any other building or space open to the public*, whether *indoors or outdoors*." The order does not define "commercial establishment," nor does it define "face covering" - suggesting anything will suffice as long as it covers the "nose and mouth."[2] After limiting its application only to "commercial establishments,"[3] it then broadly applies to "any other building" or "space" that is "open to the public."[4] The mask mandate then proceeds to list numerous exemptions, which are all subjectively determined by the wearer.

Initially, it exempts "any individual who will not come in contact with any other individual." It is unclear *when* an individual can make this determination, and whether a person who subjectively believes, in good faith, that he or she will not come into contact with another individual, but does so due to no fault of his or her own would be in violation of the Proclamation. It further exempts individuals "who will be able to maintain strict social distancing of six feet apart from any other individual." Again, it is unclear *when* an individual can make this determination and whether a person who subjectively believes, in good faith, that he or she can maintain strict social distancing but due to no fault of his or her own finds himself or herself within less than six feet of another individual would be in violation of the Proclamation.

---

169 So. 3d 372. The specific powers granted to the governor under the HSEDA are set out in La. R.S. 29:724(D).

> While Section (D)(1) permits the governor to "[s]uspend the provisions of any regulatory statute prescribing the procedures for conduct of state business ... if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay **necessary action in coping with the emergency**," there is no provision in La. R.S. 29:724 that permits the governor to enact substantive law, *Id*. (Emphasis added.) As pointed out by LHA in brief to this court, had the legislature deemed it appropriate for the governor to enact substantive legislation, it could have easily included same in the series of items designated in La. R.S. 29:724(D). This court must apply the well-settled doctrine of statutory construction, *expressio unius et exclusio alterius*, which teaches us that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional. *Sensebe v. Canal Indem. Co.*, 2010–0703, p. 16 (La.1/28/11)."

*Louisiana Hosp. Ass'n v. State*, 168 So. 3d 676, 687.
See also *LaBruzzo v. State, ex.rel. Governor*, 2014-262 (La.App. 5 Cir. 11/25/14), 165 So.3d 166 (Commandeering of property by executive order pursuant to HSEDA falls within the definition of a taking.)
[2] To illustrate the vagueness of this reference, a piece of mesh fabric with holes in it would cover the nose and mouth and, therefore, technically comply as a face covering under the Proclamation.
[3] "Commercial establishment" has different definitions (and exemptions) depending on the statutory context in which the term is used. The term generally appears to encompass those places engaging in "commerce" (*i.e.*, the sale or distribution of goods to the public).
[4] "Open to the public" is also unclear. Many non-commercial organizations could simply close their activities "to the public."

OPINION 20-0068
Representatives Bagley, Beaullieu, Edmonds, Horton, Miguez, Owen, Seabaugh, and Senator Mills
Page 5

It also exempts the following categories of individuals: all children under eight; any individual with "a medical condition that prevents the wearing of a face covering;" any individual who "is consuming food or drinks;" any individual "who is seeking to communicate with someone who is hearing impaired;" any individual who is "giving a speech for broadcast or to an audience;" and any individual "temporarily removing his or her face covering for identification purposes." All of these exemptions appear to be vague, subjective, and/or unenforceable. The rule does not permit anyone to demand parents *prove* the child is "under eight," and it does not define medical condition (while other state and federal laws prohibit demanding or forced sharing of personal health information). Any individual carrying around a Diet Coke or a pack of crackers is apparently exempt. Any person who generally and subjectively "seeks to communicate" with any other person who may be hearing impaired is exempt. (The rule apparently only requires one to "seek" to have such interaction, not to actually *know* someone with whom they may communicate is hearing impaired, much less have immediate plans to communicate with them face to face. "Communicate" is also a broad term, and could include communicating by text, phone, Zoom, or carrier pigeon, but in any event, the communicator is exempt.) And if an individual plans to "give a speech" (undefined) to an "audience" (also undefined), then that individual is also exempt. In short, virtually any individual *may* fall within one or more of these exemptions.

Although the rule contains exemptions that would or could apply to the vast majority of the public, it then purports to require both compliance and *enforcement* by "*commercial establishments,*" upon threat of the business (not the mask-less individual) being issued a "citation." The Proclamation does not say who would issue the citation and for what. It is likewise silent as to what the sanction may be, or the legal basis for conscripting businesses to enforce executive orders.[5]

After threatening "citations" to businesses, however, it says "citations" may be written "*only* to businesses or organizations (other than religious organizations- also undefined) *that fail to enforce the requirement*. In other words, the order purports to turn private businesses into the Governor's Proclamation enforcement arm. Having threatened businesses "that fail to enforce the requirement" (which is riddled with subjective exceptions, making it difficult even for experienced attorneys to discern its contours), it goes on to further muddy the water by providing a safe-harbor. Businesses are "entitled to rely" on the representations of their employees, customers, and patrons with regard to whether they qualify for an exemption.

---

[5] The emergency powers act in La. R.S. 29:724(E) provides, "[i]n the event of an emergency declared by the governor pursuant to this Chapter, any person or representative of any firm, partnership, or corporation violating any order, rule, or regulation promulgated pursuant to this Chapter, shall be fined not more than five hundred dollars or confined in the parish jail for not more than six months, or both. No executive order, proclamation, or regulation shall create or define a crime or fix penalties." The first sentence requires promulgation of any "order, rule, or regulation" before the statutory penalty can be enforced. That is consistent with due process. The second provision makes clear that no executive order or proclamation can define or create a crime. Because the emergency powers act derogates from the norm with regard to separation of powers as well as ordinary limits on executive authority, the statute is strictly construed.

OPINION 20-0068
Representatives Bagley, Beaullieu, Edmonds, Horton, Miguez, Owen, Seabaugh, and Senator Mills
Page 6

Neither the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("LHSEADA"), La. R.S. 29:721, *et seq.*, nor the Louisiana Health Emergency Powers Act ("LHEPA"), La. R.S. 29:760, *et seq.*, authorize the Governor, unilaterally, by executive *proclamation*, to make businesses his proclamation enforcement police. And they may not be threatened with "citations" or otherwise sanctioned for refusing to be his enforcement arm.

Although the order provides a safe harbor for businesses to rely on the representations of customers, patrons, or employees, it does not provide any such safe harbor for individuals. To the contrary, after threatening businesses with sanctions if they "fail to enforce the requirement," it ambiguously states, without any citation to authority, that "law enforcement personnel may enforce trespassing laws or any other laws the patron, employee or customer may violate." Thus, it threatens businesses who refuse to become gubernatorial enforcement agents and encourages businesses to call in local law enforcement for help. The order purports to make it unlawful if any person enters the businesses without a mask and refuses to leave, even if the individual has a physical or mental condition that conflicts with wearing a face covering or is otherwise exempt. It purports to graft the mask requirement onto pre-existing criminal statutes by authorizing police to enforce "trespassing" or "other applicable laws" to deal with allegedly non-compliant individuals, even though the Proclamation contains numerous exemptions that could exempt virtually any individual. It even appears to convert a dispute over the applicability of the mask requirement into a trespassing violation, even though it is not the property owner's terms and conditions that are being violated.

Another issue, which should be of specific concern to law enforcement, is the reference to "citation." The only enforcement provided for in La. R.S. 29:724(E), *et seq.*, is a criminal provision found in La. R.S. 29:724. This provision establishes that any violations of such executive orders are misdemeanors. This raises serious concerns related to both Fourth Amendment rights to be free from search and seizure without a warrant and the Fifth Amendment Right against self-incrimination and other constitutional concerns. As such, all of the protections afforded suspects in criminal investigations are required. Any agency should understand that the violation of a valid executive order (within the proper scope of the governor's powers) should be treated as a criminal investigation *ab initio* and proceed accordingly. Additionally, any agency engaged in enforcement of these orders should also recognize that federal civil liabilities associated with law enforcement also apply. Relatedly, the State may incur liability relative to the activities of the State Fire Marshal. Louisiana Revised Statutes 40:1563.1 sets out the authority of the Fire Marshal and his deputies to make arrests. It specifically outlines those offenses for which the Fire Marshal has investigative authority. Nothing in this section references enforcement of executive orders as described in La. R.S. 29:271, *et seq.*, nor does LSEADA itself grant him such authority. To the extent that the order purports to deputize business owners to interrogate their customers and make on-the-spot compliance enforcement determinations, the business owners may be found to have been acting under color of state law and themselves be

subjected to civil rights and/or private tort liability, spawning a significant amount of costly and distracting litigation for which hard-pressed businesses are neither prepared nor insured.

The upshot of these fatally ambiguous and legally unauthorized provisions is potentially lethal. It exposes law-abiding individuals to confrontational encounters with business owners (who fear enforcement against their businesses) as well as encounters with police (who have been called to deal with mask-less individuals), *even though the individual may be fully compliant with the order*. It exposes individuals to unlawful searches and seizures, as well as burdens them with exposing potentially sensitive personal health information and having it exposed to others in a public and disputatious setting.

The mask mandate flatly violates due process, separation of powers, the delegation clause, state public accommodation anti-discrimination laws, and La. R.S. 29:724(E); and it is unenforceable. *To the contrary, the LHSEADA specifically prohibits any order from creating a crime or fixing penalties;* and, to this degree, the order is *ultra vires*. Moreover, any law enforcement agency – and importantly any business – may be exposed to liability under state and federal civil rights laws for violating an individuals' constitutional rights under color of law.[6] Such a massive liability expansion is clearly a matter for legislative balancing and accountability, not executive fiat.

### The 50-person Limit

The 50-person limit is also too vague to be constitutional.[7] Moreover, the exceptions to the rule swallow any rational basis for it. The Proclamation initially states that "crowd sizes are limited to no more than 50 people in any single *indoor* space at the same time." It does not distinguish between the size of the *indoor* space and its capacity. Thus, the Superdome and a 10 x 10 room are treated the same.

It goes on to say that "crowd sizes are limited to 50 people in any *outdoor* space where individuals will be in close proximity to one another and unable to maintain strict social distancing of six feet apart from individuals who are not immediate household

---

[6] The business may become liable because it is acting as a government enforcement agent. Although the right of protection against unreasonable searches and seizures is designed to protect against governmental intrusion, in certain situations, private citizens can be considered to have acted as government agents. Useful criteria in determining whether an individual was acting as a private party or as an agent of the government are as follows: (1) whether the government knew of and acquiesced in the intrusive conduct; (2) whether the private party's purpose in conducting the search was to assist law enforcement agents or to further its own ends; (3) whether the private actor acted at the request of the government; and (4) whether the government offered the private actor a reward. *See State v. Lavergne*, 2008-0044 (La.App. 1 Cir. 5/2/08), 991 So.2d 86. Here, the Governor certainly knows of and has gone beyond acquiescing in the conduct – he is demanding it to further his own objective. And avoiding being cited, for the business, is their reward for assisting in enforcing the order.

[7] The blanket limits on the number of people who may assemble has First Amendment implications because it sweeps constitutionally protected conduct (such as a protest) as well as the basic right to assemble into its reach.

members." Again, it does not distinguish between outdoor spaces, it does not define "close proximity," and it does not define the scope of the phrase "unable to maintain strict social distancing."

The larger defect in this provision is that it categorically exempts thousands of businesses - those that are "essential" pursuant to CISA and those that are operating at 50% capacity, regardless of their size, from the gathering requirements of the order.[8] Thus, under the terms of the order, any indoor or outdoor facility operating at 50%, even if 100% amounts to 100,000 people and 50% to 50,000, the crowd is exempt. The order is both over-inclusive and under-inclusive at the same time, a characteristic that frequently defines unconstitutionally vague and overbroad statutes. In addition, the large number of exemptions (Albertsons, Lowes, Ace Hardware, alcoholic beverage stores, to name a few stores that have remained open for months without restrictions), undermine any rational basis for the rule. A rule that has so many exceptions that it undermines its very purpose is unconstitutional because it is irrational and fails to serve a legitimate government interest.

### Closure of "bars"

The bar closure is also problematic for several reasons. First, the Proclamation provides little data to support a statewide closure of a single type of business, without regard to whether the business is operating with the utmost care and a perfect record, operates exclusively with outdoor service, or operates in a geographical location with little data showing spikes related to bars. The Proclamation vaguely refers to a handful of outbreaks traced to "bars" but does not say where those outbreaks occurred and does not place the minimal data in the context of the total number of facilities that qualify as a "bar." It also only vaguely connects outbreaks by stating they "may be" related to bars based on hearsay from contact tracing. Without stating adequate data to support it, the Governor has singled out one type of business and punished hundreds of law-abiding business owners. While the data and the public health statutes may permit targeted closures of *individual* businesses where outbreaks are documented to have occurred, the Governor has no authority to discriminate against a single business type statewide in the absence of far more data to support such a draconian and arbitrary exercise of

---

[8] As an illustration of the vagueness of this exemption, thousands of businesses closed after the Governor's stay-at-home order was issued. That order also had a CISA "essential business" exception. Governor Edwards, disclaimed the scope of the order's restriction and announced April 30, 2020, that thousands of businesses *never were* required to close. Numerous business owners reacted with shock and dismay that after months of saying businesses must stay closed and never once providing any specificity, the Governor said many of those businesses *never were required* to close. Many businesses were bankrupted during this time. During the past four months – since the first COVID-19-related order was issued, the Governor has issued broadly restrictive orders but has not enforced them. Recently however, he directed the State Fire Marshal to visit businesses who are alleged to be non-compliant (by whom no one knows). We are not aware of any statutory authority authorizing the Fire Marshal as an enforcement agent for executive orders, or otherwise permitting the Fire Marshal to threaten a business license without due process for allegedly violating an executive proclamation. At the same time, however, the Governor encouraged protests and did not limit any of those gatherings or even suggest they should be limited.

power. Moreover, suspending or threatening the business or alcohol permit of any business would likely amount to violation of due process as these permits are recognized property interests protected under the due process clause. It could also result in a "constructive taking" via government regulation.[9]

## SUMMARY

In summary, the three provisions of the executive order - the mask mandate, the 50-person indoor/outdoor gathering limit, and the bar closure – are likely unconstitutional and unenforceable. Although the mask mandate and the 50-person limit may be good recommendations for personal safety, they may not be enforced with financial or criminal penalties. Both businesses acting under color of law as mask police and actual police acting as mask police could face liability if individual civil rights are violated due to the Proclamation.

With best regards,

*[signature: Jeff Landry]*

JEFF LANDRY
ATTORNEY GENERAL

---

[9] In *Avenal v. State*, 2003-252` (La. 10/19/04), 886 So.2d 1085, *cert. denied*, 544 U.S. 1049, 125 S.Ct. 2305, (1995), the Louisiana Supreme Court discussed the concept of taking under La.Const. art. I, §4. Justice Weimer explained in his concurring opinion in *Avenal*, 04-2185, p. 7, 886 So.2d at 1113, "La. Const. art. 1 §4, using both words, 'taken" and "damaged," encompasses damage claims that would not necessarily qualify as a taking under the Fifth Amendment. Under Louisiana law, a damage claim is compensable although it is not a taking."